FILED

08/04/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0424

DA 24-0424

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 181N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DUSTIN THOMAS BARKER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-22-473(B)
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator,
Dustin L. Kuipers, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

            Travis R. Ahner, Flathead County Attorney, Larissa Malloy, Deputy
County Attorney, Kalispell, Montana

Submitted on Briefs: July 30, 2026

Decided:  August 4, 2026

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1　Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2　In February 2024, Dustin Thomas Barker pleaded guilty to his fourth or subsequent violation of driving under the influence. *See* § 61-8-1002(1)(a), MCA (2023).[1] In June 2024, the Eleventh Judicial District Court sentenced Barker to the Department of Corrections for thirteen months, with a recommendation for treatment at the WATCh program, followed by a three-year suspended sentence at Montana State Prison. The District Court also imposed a fine and several fees and surcharges. Barker appeals, contending that the court did not adequately consider his ability to pay. We reverse and remand to the District Court for further consideration of Barker's ability to pay in light of our decision in *State v. Cole,* 2026 MT 52*,* 427 Mont. 64, 585 P.3d 955.

¶3　At the June 5, 2024 sentencing hearing, Barker asked the District Court to waive all fines, fees, and surcharges. Defense counsel asserted that because of Barker's conviction in Montana, he faced a potential extradition to Idaho for violation of his felony probation there. The prosecution asked the court to conduct an ability to pay inquiry. The court recalled that Barker earned an estimated $2,600 per month as a welder fabricator, had

---

[1] All statutory references are to the 2023 Montana Code Annotated, in effect at the time of Barker's offense. *State v. Tipton*, 2021 MT 281, ¶ 14, 406 Mont. 186, 497 P.3d 610 (citation omitted).

2

minimal assets, and had an unknown amount of debt. The court noted that while under the custody of Montana or Idaho, Barker's earning potential would likely be little to nothing. The court then asked about Barker's employment prospects once released. Barker responded that he was uncertain given that he may serve ten years in Idaho once extradited.

¶4    The court pronounced:

> With respect to the conditions, I find given his occupation as a welder that he does [have] the capacity and the ability to pay fines and fees after his discharge from active sentence. There will be no requirement that he make any payments toward those obligations obviously while he is in custody, either in the State of Montana or the State of Idaho. But thereafter, I do find that he has the ability to pay, or will have the ability to pay based on his job skills as a welder.

The District Court imposed a $5,000 mandatory minimum fine (§ 61-8-1008(1)(a)(i), MCA); a $500 felony surcharge (§ 46-18-236(1)(b), MCA); a $50 surcharge for victim and witness advocate programs (§ 46-18-236(1)(c), MCA); a $10 technology fee (§ 3-1-317, MCA); a $100 felony cost of legal fees and expenses (§ 46-18-232, MCA); supervision fees (§ 46-23-1031, MCA); and a $50 fee for the presentence investigation report (§ 46-18-111, MCA).

¶5    The legality of a criminal sentence "is a question of law that we review de novo to determine whether the court's interpretation of law is correct." *State v. Trombley*, 2026 MT 77, ¶ 6, 427 Mont. 384, 587 P.3d 779 (citation omitted). "We review de novo whether a district court adheres to the applicable sentencing statute." *State v. Horn*, 2026 MT 79, ¶ 6, 427 Mont. 402, 588 P.3d 102 (citation omitted).

¶6    Both parties submitted their opening briefs in this appeal before the release of the Court's decision in *Cole*, which is controlling here and has superseded many of the parties'

arguments. In *Cole*, we held that "sentencing courts must consider a defendant's ability to pay when imposing a mandatory minimum fine and may suspend the portion a defendant lacks the ability to pay." *Horn*, ¶ 10 (citing *Cole*, ¶¶ 11-13). Accordingly, even for a mandatory minimum fine pursuant to § 61-8-1008, MCA, the sentencing court must consider "the nature of the crime committed, the financial resources of the offender, and the nature of the burden that payment of the fine and interest will impose." Section 46-18-231(3), MCA. "Under *Cole*, the sentencing court must impose the mandatory fine under the appropriate sentencing statute, determine the defendant's ability to pay the fine pursuant to § 46-18-231(3), MCA, and then suspend the fine to the extent the defendant lacks the ability to pay." *State v. Hagberg*, 2026 MT 135, ¶ 16, ___ Mont. ___, 591 P.3d 1095 (citing *Cole*, ¶ 14).

¶7 Here, the District Court took account of Barker's earning potential while in custody and remarked that he would not have to make payments during that time. Barker's future employability was unknown, in part, because of his impending ten-year sentence in Idaho for violating probation. Barker points out in his reply brief that "*Cole* now harmonizes mandatory minimum fines by permitting district courts to suspend portions of those fines it finds indigent defendants are unable to pay." He argues that the court "only minimally considered Barker's monetary situation" and requests that the Court remand with instructions to conduct an appropriate inquiry of Barker's ability to pay the fine, fees, and costs.

¶8 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

4

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. We reverse the imposition of the $5,000 fine and other fees and costs and remand this matter to the District Court to conduct further analysis of Barker's ability to pay in light of our decision in *Cole*. Because the effect of Barker's Idaho sentence was unknown at the time of sentencing in this matter, the court may consider additional information of his current circumstances and other financial obligations.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justices Ingrid Gustafson, Laurie McKinnon, and Katherine M. Bidegaray, specially concurring in part and dissenting in part.

¶9  The statute at issue here, § 61-8-1008(1)(a)(i), MCA, requires imposition of a mandatory minimum fine regardless of a defendant's ability to pay. In *State v. Gibbons*, 2024 MT 63, 416 Mont. 1, 545 P.3d 686, *cert. denied*, ___ U.S. ___, 145 S. Ct. 355 (2024), this Court determined that § 61-8-731(3), MCA, was unconstitutional as it precluded sentencing courts from assessing a defendant's ability to pay and required imposition of a mandatory minimum fine. *Gibbons*, fundamentally, concerned the constitutional prohibition of imposing fines on those people uniquely unable to pay them. Since *Gibbons*

5

was issued, the State relentlessly crusaded for it to be overturned and was eventually successful in *State v. Cole*, 2026 MT 52, 427 Mont. 64, 585 P.3d 955.

¶10 In *Cole*, under the guise of statutory harmonization, the Opinion ignored the plain language of § 46-18-231(3), MCA—"The sentencing judge may not sentence an offender to pay a fine unless the offender is or will be able to pay the fine." *Cole* was wrongly analyzed and decided. Whether a fine is suspended after it is imposed is irrelevant to the predicate determination of the defendant's ability to pay the minimum prescribed fine.

¶11 In her dissent in *Cole*, Justice Bidegaray appropriately analyzed the issue of whether suspension of a fine cures the constitutional defect of imposition of a mandatory minimum fine on a defendant who cannot and will not be able to pay the fine, such that it is not repeated herein. Nothing in this record or in intervening law justifies departure from those principles. We concur in remand to the District Court for further consideration of Barker's ability to pay. If the District Court determines Barker does not have the ability to pay the mandatory minimum fine, no fine should be imposed, suspended or not.

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY

6